**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

```
------------------------------------------------------------ x
In re:                                        :
                                              :     Chapter 11
JSMITH CIVIL, LLC                             :
                                              :     Case No.: 23-02734-5-JNC
                               Debtor.        :
                                              :
------------------------------------------------------------ x
                                              :     Adversary Case No. 25-00084-5-JNC
JSMITH CIVIL, LLC                             :
                                              :
                               Plaintiff      :
     v.                                       :
                                              :
BARNHILL CONTRACTING COMPANY                  :
                                              :
                               Defendant      :
----------------------------------------------------------- x
```

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**

Defendant Barnhill Contracting Company ("<u>Barnhill</u>" or "<u>Defendant</u>"), through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint filed by Plaintiff JSmith Civil, LLC ("<u>JSmith</u>" or "<u>Plaintiff</u>" and together with Barnhill, the "Parties") and states:

**INTRODUCTION**

Plaintiff is a subcontractor that contracted with Barnhill to provide certain services at several different Barnhill construction sites.  A dispute arose regarding JSmith's performance on a project commonly referred to as the 400H project, resulting in JSmith initiating a pre-petition state court lawsuit against Barnhill.  This lawsuit was subsequently ordered to arbitration, but shortly thereafter, JSmith filed its chapter 11 petition. On January 3, 2024, this court granted Barnhill relief from the automatic stay so the arbitration could proceed and necessarily decide all

claims between the Parties, including Barnhill's claims against the Debtor for its pre-petition abandonment of certain Barnhill projects. The Parties have been diligently litigating these claims in the arbitration ever since. The arbitration hearing will begin on August 25, 2025.

Now, nearly 3 years after JSmith filed its lawsuit in state court against Barnhill, JSmith attempts to bring this new action against Barnhill before this Court that are based on the same set of facts as the suit that is currently being arbitrated outside of this Court. These new claims, which were never disclosed in its bankruptcy schedules, Disclosure Statement, Plan of Reorganization nor other document in the bankruptcy case, neither arise in nor concern matters affecting the administration of the bankruptcy estate, nor concern rights duly established in the bankruptcy proceeding. As such, this adversary proceeding is non-core, and because the proceeding lacks a close nexus, or any nexus at all, to the bankruptcy plan or preceding, this Court lacks jurisdiction to adjudicate it. Accordingly, the Complaint should be dismissed pursuant to Rule 12(b)(1).

## LEGAL STANDARD

Bankruptcy courts are those of limited jurisdiction. Only the Constitution and statutes promulgated by Congress can confer subject matter jurisdiction on a bankruptcy court. Bankruptcy Courts "must be alert to avoid overstepping their limited grants of jurisdiction." *In re Poplar Run Five Ltd. Partnership*, 192 B.R. 848, 854 (Bankr. E.D.V.A. 1995) (quoting McCorkle v. First Pa. Banking & Trust Co., 459 F.2d 243, 244 n.1 (4th Cir. 1972). As such, when challenged, "[i]t is to be presumed that a cause lies outside of this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994)).

## ARGUMENT

2

As an Article I court, two federal statutes govern bankruptcy court jurisdiction: 28 U.S.C. § 1334 and 28 U.S.C. § 157. Section 1334 provides:

> the district courts shall have original and exclusive jurisdiction of all cases under title 11 . . . original but not exclusive jurisdiction of all civil proceedings arising under title 11, [and, original but not exclusive jurisdiction of all civil proceedings] arising in or related to cases under title 11.

Essentially, § 1334 allows the district court to act in (1) *cases* under Title 11 (a case created by the filing of a bankruptcy petition); (2) *proceedings arising* under Title 11 (a proceeding borne only from the bankruptcy code); (3) *proceedings arising in a case* under Title 11 (proceedings necessary to effectuate the case according to the bankruptcy code); and (4) *proceedings related to a case* under Title 11. 28 U.S.C. § 1334 (causes of action under other law as long as it "aris[es] in or relate[s] to" a bankruptcy case).

Section 157(a) allows a district court to refer any of the types of cases and proceedings listed in §1334 to the bankruptcy court and distinguishes in which of those proceedings the bankruptcy court may enter a final judgment. The bankruptcy court's power to enter final judgment is limited to all "*core* proceedings *arising under* title 11, or *arising in a case under* title 11" when referred under subsection (a). See *In re Freeway Foods of* Greensboro, 449 B.R. 860, 873 (Bankr. M.D.N.C. 2011). A final order can only be entered by a bankruptcy court in "core" proceedings. It follows that bankruptcy courts automatically have jurisdiction over "core" proceedings.

I.      **PLAINTIFF'S CLAIMS ARE NOT "CORE" CLAIMS.**

In order to clarify what a "core" proceeding is, many courts have offered prose on what "arising under title 11 or arising in a case under title 11" means. See, e.g., *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 96 (5th Cir.1987) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in

3

the context of a bankruptcy case."); *J. Baranello & Sons, Inc. v. Baharestani* (*In re J. Baranello & Sons, Inc.*), 149 B.R. 19, 23 (Bankr. E.D.N.Y. 1992) ("Core proceedings include matters which were traditionally deemed inherently within the bankruptcy courts' jurisdiction."); *Acolyte Elec. Corp. v. City of New York* (*In re Acolyte Elec. Corp.*), 69 B.R. 155, 173 (Bankr. E.D.N.Y. 1986) ("To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement."), aff'd, No. 86–0329(JBW), 1987 WL 47763 (E.D.N.Y. Mar. 27, 1987). The consensus is that centrality to the bankruptcy case is critical. As the Supreme Court summarized and simplified: a core proceeding must "stem [] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern v. Marshall*, 564 U.S. 462 (2011).

Importantly, this excludes proceedings "related to" cases under title 11. Because proceedings "related to" cases under title 11 are excluded from "core" proceedings, they cannot be finally decided by the bankruptcy court. "Related to" cases under title 11 are considered "non-core." *Id* (citing *In re Exide Technologies*, 544 F.3d 196, 205 (3rd Cir. 2008); *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005). Unlike core proceedings, jurisdiction is not automatic for non-core proceedings, though the bankruptcy court can still exercise jurisdiction over non-core proceedings when such jurisdiction is conferred by the remaining avenue provided § 1334: when a case is "related to" a case under title 11.

"The generally accepted definition of 'related to' was first stated by the Third Circuit in *Pacor, Inc. v. Higgins*: proceedings 'related to' the bankruptcy case are those whose outcome could have [an] effect on the bankruptcy estate. 743 F.2d 984, 994 (3d Cir. 1984); see, e.g., *Morrison v. Western Builders of Amarillo, Inc.* (*In re Morrison*), 555 F.3d 473, 479 (5th Cir. 2009); *Exide*

4

*Technologies*, 544 F.3d at 206; *Nilsen v. Neilson* (*In re Cedar Funding, Inc.*), 419 B.R. 807, 818 (9th Cir. BAP 2009).

Here, Debtor incorrectly asserts this proceeding is "core" and that the bankruptcy court has jurisdiction because its claims in the Adversary Proceeding "arise[] and concern[] matters affecting administration of the bankruptcy estate [(28 U.S.C. 157(b)(2)(A))], . . . involve[] the adjustment of a debtor-creditor relationship [(28 U.S.C. 157(b)(2)(O))], . . . and concern[] rights duty [sic] established in the [Debtor's bankruptcy case]"). Comp. at ¶ 4.

First, Debtor's classification of the claims in the Adversary Proceeding as arising and concerning matters affecting the administration of the bankruptcy estate is not of consequence. The mere characterization of an adversary proceeding as within the core terms of 28 U.S.C. §§ 147(b)(2)(A–O) is not dispositive of whether a proceeding is core. See *Treadway v. United Bank & Trust Co.* (*In re Treadway*), 117 B.R. 76, 81 (Bankr. D.Vt. 1990) (citing *Taxel v. Commercebank* (*In re World Financial Center, Inc.*), 64 B.R. 980, 986 (Bankr. S.D.Cal. 1986)).

More importantly, the assertion is incorrect. Unless the plan says something different, confirmation vests the property of the estate in the reorganized debtor. 11 U.S.C. § 1141(b). The estate comes to an end and ceases to exist. *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390; *Fairfield Communities, Inc. v. Daleske* (*In re Fairfield Communities, Inc.*), 142 F.3d 1093, 1095 (8th Cir.1998); *Rickel & Assocs., Inc. v. Smith* (*In re Rickel & Assocs., Inc.),* 272 B.R. 74, 97–98 (Bankr. S.D.N.Y. 2002). As the Third Circuit put it "[a]t the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred. *In re Resorts Intern., Inc.* 372 F.3d 154 (3rd Cir. 2004) (citing *In re Fairfield Cmtys.,* 142 F.3d at 1095 (holding that once a bankrupt debtor's plan has been confirmed the debtor's estate ceases to exist)). Indeed, the Bankruptcy Court in

Delaware recently reiterated and adopted this concept in its opinion in *Nu Ride Inc., et al. v. Certain Underwriters at Lloyd's, London:* "there is no longer a bankruptcy estate that can be affected post-confirmation." No. 23-10831, 2025 Bankr. LEXIS 1359, at *16 (Bankr. D.Del. June 5, 2025). Accordingly, the outcome of a post-confirmation proceeding cannot, by definition, affect the estate. *In re Resorts Int'l, Inc*., 372 F.3d 154,165 (3rd Cir. 2004).

Further, the assertion that the claims involve an adjustment of a debtor-creditor relationship is also incorrect. Presumably, this is based on Debtor's belief that the claims brought in the adversary proceeding could result in augmenting the estate. That is simply not the case here. The Plan provides that monies obtained by "actions to recover past-due prepetition accounts receivable and/or retainage" would fund the Plan, not "any action" or "actions asserting tort claims." None of the causes of action asserted in the complaint are meant to recover past-due prepetition accounts receivable and/or retainage. In fact, the tort claims asserted in the Adversary Proceeding were never disclosed in the Debtor's schedules nor Disclosure Statement and were not factored in the liquidation analysis presented to creditors and to the Court in the confirmation process. There would be no requirement in the confirmed Plan for Debtor to utilize any realized damages from this Adversary Proceeding to fund the Plan. Any recovery by the Debtor through this Adversary Proceeding would solely be a windfall for itself (and its individual owner) as there is no requirement for any recovery from Barnhill to be used to fund the Plan. And because the outcome would not affect the implementation of the Plan or otherwise affect the bankruptcy in any way, there is no "related to" jurisdiction. Even if it were true that any realized recovery from this proceeding may affect recovery of creditors, "to interpret the language of § 157(b)(2)(O) so broadly would render the distinction between core and non-core claims meaningless." *In re Complete Management, Inc*., 2002 WL 31163878 (S.D.N.Y. 2002) (citing *In re Orion Pictures*, 4

F.3d 1095, 1102; *Durso Supermarkets v. D'Urso* (*In re Durso Supermarkets, Inc*.), 170 B.R. 211, 214 (S.D.N.Y. 1994) (holding § 157(b)(2)(O) inapplicable and stating that "[plaintiff]'s claim of fraud may, if successful, enlarge the estate; however, that fact without more does not 'affect the liquidation of the assets . . . or the adjustment of the debtor-creditor or the equity security holder relationship'")).

## II.   THE COURT LACKS JURISDICTION OF PLAINTIFF'S NON-CORE CLAIMS.

The claims Debtor seeks to adjudicate are non-core, so bankruptcy jurisdiction is not automatic for such claims. As discussed above, section 1334 confers jurisdiction over proceedings "related to" cases under title 11. The Fourth Circuit has joined with several other circuits in adopting the *Pacor* test promulgated by the Third Circuit to make that determination: [a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984). The Supreme Court of the United States has explained that the critical component of the *Pacor* test is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995).

*Pacor* and its progeny, however, were not decided in a post-confirmation context. In recognizing that the jurisdiction of the bankruptcy court shrinks significantly after confirmation, the Fourth Circuit and many others have adopted the "close nexus" test, again out of the Third Circuit. The test provides that "for 'related to' jurisdiction to exist at 'the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding.' Practically speaking, under this inquiry "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed

7

plan will typically have the requisite close nexus." *Valley Historic Ltd. Partnership v. Bank of New* York, 486 F.3d 831, 836–837 (4th Cir. 2007) (quoting *Binder v. Price Waterhouse & Co. (In re Resorets Int'l, Inc.*), 372 F.3d 154, 167 (3ᵈ Cir. 2004)).

Here, the Debtor filed this non-core proceeding eight months following confirmation of the Plan. As such, the matters litigated in the Adversary Proceeding must affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan in order for the bankruptcy court to have jurisdiction. As previously discussed, the claims and the potential outcome of the Adversary Proceeding are completely and entirely removed from the bankruptcy. The Plan only binds the Debtor to using proceeds of any "actions to recover past-due prepetition accounts receivable and/or retainage" to fund the plan. Should Debtor succeed in obtaining its award from the Adversary Proceeding, none of those funds would be required to be used to pay secured or unsecured creditors. Even if the Debtor was bound to use any recovery to pay the claims of creditors, the claims at issue in an adversary proceeding must still satisfy the requirements of *Valley Historic,* and here, there is no close nexus to the Plan. As the Court in *Nu Ride, Inc.* recently concluded, a means by which some creditors may get additional recovery is not alone a sufficient nexus. 2025 Bankr. LEXIS 1359, at *18. Rather, the Court implied that such funding would need be the "lynchpin of the [d]ebtor's [p]lan" to sufficiently affect the interpretation, implementation, consummation, execution, or administration of the Plan as required in the Fourth Circuit.

Accordingly, these non-core claims have no effect on the Plan nor are they related to the bankruptcy.

III.     **THE RETENTION OF JURISDICTION CLAUSE IN THE PLAN IS NOT EFFECTIVE TO CONFER SUBJECT MATTER JURISDICTION.**

The Plan provides:

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of §§ 105(a) and 1127 of the Bankruptcy Code and for, without limitation, the following purposes, inter alia:

1.  To determine any and all objections to the allowance of Claims and Interests and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

2.  To determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any Claim resulting therefrom;

3.  To determine all controversies and disputes arising under or in connection with the Plan and applications, adversary proceedings and litigated matters pending on the Confirmation Date;

4.  To effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

5.  To determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

6.  To determine all disputes regarding property of the estate and establish and adjust procedures for the orderly administration of the Estate;

7.  To determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

8.  To replace the Debtor-in-Possession with a Trustee under § 1104 for good cause shown.

Federal courts, including bankruptcy courts, are courts of limited jurisdiction and only have the authority endowed by the Constitution or conferred by Congress. If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization are irrelevant. It is a fundamental principle that a court cannot "write its own jurisdictional ticket." *In re Poplar Run Five Limited Partnership*, 192 B.R. at 859 (quoting

*Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994)). Subject matter jurisdiction cannot be conferred upon a court that does not have jurisdiction in the first instance. *See In re Diagnostic International, Inc.*, 257 B.R. at 514. "[A] retained jurisdiction clause cannot grant subject-matter jurisdiction over a proceeding when the proceeding itself is already outside the jurisdictional boundaries defined by statute." *Id.* at 859, (citing *Walnut Assocs. v. Saidel*, 164 B.R. 487, 494–95 (E.D.Pa. 1994); *Portfolio Lease Funding Corp., No. 1 v. Seagate Technology*, *Inc.* (*In re Atlantic Computer Sys., Inc.*), 163 B.R. 704, 707 (Bankr. S.D.N.Y. 1994)). A retention of jurisdiction provision may correctly state the matters over which the bankruptcy court has jurisdiction but cannot confer jurisdiction in and of itself. There is no situation in which plan provisions, in and of themselves, can confer jurisdiction on the Bankruptcy Court, "[e]ven if [the] lawsuit was explicitly described in the [p]lan[.]" 2025 Bankr. LEXIS 1359, at *12.

Debtor has stated in the Adversary Proceeding that it consents to the bankruptcy court's jurisdiction. Unlike personal jurisdiction or the finality of a bankruptcy courts' decision in a non-core proceeding, subject matter jurisdiction is not something to which one may consent. A court either has the power to hear a matter or not, and can only give such clauses effect if the court actually has jurisdiction.

## CONCLUSION

Because the matters asserted in the Adversary Proceeding do not stem from the bankruptcy itself and the adjudication of the claims will in no way affect the implementation of the Plan, the Bankruptcy court does not have jurisdiction over the claims asserted in the Adversary Proceeding. To whatever extent the retention of jurisdiction clause in the Plan extends to the matters alleged in the Adversary Proceeding, the clause is not effective in conferring jurisdiction on the bankruptcy court.

For the foregoing reasons, Defendant Barnhill Contracting Company respectfully submits that the Complaint should be DISMISSED WITH PREJUDICE, that Barnhill should be AWARDED its reasonable attorney's fees and costs incurred in responding to the Complaint, and that this Court should GRANT Barnhill such other and further relief as justice so requires.

Dated: June 23, 2025                                    Respectfully submitted,


/s/ James S. Livermon, III
James S. Livermon, III
N.C. State Bar No. 26492
Telephone: 919-755-2148
Email: Charlie.Livermon@wbd-us.com
Eudora F. S. Arthur
N.C. State Bar No. 59854
Telephone: 919-755-2178
Email: Dorie.Arthur@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601

and

/s/ R. Jason Herndon
R. Jason Herndon
N.C. State Bar No. 33977
Telephone:  (919) 828-0564
Email: jasonherndon@parkerpoe.com
PNC Plaza
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601

*Attorneys for Barnhill Contracting Company*

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 23, 2025, a copy of the foregoing Memorandum of Law in Support of Motion to Dismiss was served on all counsel of record via this Court's CM/ECF electronic filing system.

Matthew W. Buckmiller, Esq.
Buckmiller & Frost, PLLC
4700 Six Forks Road, Suite 150
Raleigh, NC 27609


*/s/ James S. Livermon, III*
James S. Livermon, III