UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

JSMITH CIVIL, LLC,   CASE NO. 23-02734-5-JNC
                     CHAPTER 11
   DEBTOR.

| | |
|---|---|
| **JSMITH CIVIL, LLC,**<br><br>*Plaintiff*,<br><br>vs.<br><br>**BARNHILL CONTRACTING COMPANY**<br><br>*Defendant*. | AP NO. 25-00084-5-JNC |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 12(b)(1) MOTION TO DISMISS**

**NOW COMES** Plaintiff JSMITH CIVIL, LLC ("Plaintiff"), and hereby submits this Memorandum in Opposition to Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. [Doc. 8].

**FACTUAL BACKGROUND FROM THE COMPLAINT**

PARTIES, JURISDICTION AND VENUE

Plaintiff JSmith is a North Carolina limited liability company. (Complaint ¶ 1). Defendant Barnhill Contracting Company is a North Carolina limited liability company which maintains its principal office in Nash County, North Carolina. (Id. at ¶ 2). This adversary proceeding relates to the above-captioned bankruptcy proceeding that was commenced by Plaintiff on September 19, 2023 (the "Petition Date"), through the filing of a voluntary petition seeking relief under chapter 11 of the

Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court"), BK Case No. 23-2734-5-JNC (the "Bankruptcy Case"). (Id. at ¶ 3).

The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157, and 1334, as it arises in and concerns matters affecting the administration of the bankruptcy estate, see § 157(b)(2)(A), involves the adjustment of a debtor-creditor relationship, see § 157(b)(2)(O), and concerns rights duty established in the above-captioned bankruptcy proceeding and under the Bankruptcy Code and applicable North Carolina law, and—as a result—the relief requested herein, is a "core proceeding" as defined under 28 U.S.C. § 157(b)(2). (Id. at ¶4). The Court, has jurisdiction to enter a final and dispositive Order granting the relief requested herein, Budget Service Co. v. Better Homes of Va., 804 F.2d 289 (4th Cir. 1986); however, and to the extent any claim for relief asserted herein is determined to be a non-core proceeding, JSmith consents to entry of a final Order in this matter in accordance with 28 U.S.C. § 157(c)(2). (Id. at ¶ 5). This Court, likewise, has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. (Id. at ¶ 6).

I. **THIS COURT HAS SUBJECT MATTER JURISDICTION**

The District Court has original and exclusive jurisdiction of all cases under title 11, arising under title 11, or arising in or related to cases under title 11.

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C.S. § 1334. This Court has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

Certain undisputed facts are important to consider when analyzing whether this Court has subject matter jurisdiction in this case.

1. Defendant filed a proof of claim in JSmith's bankruptcy in the amount of $2,177,567.14 [Doc. 63]. The basis for the claim is "damages for breach of contract, incomplete and defective work."[1]
2. Defendant's counterclaims are the subject of an arbitration proceeding which is currently set for hearing the week of August 25, 2025, as are Plaintiffs' claims against Defendant which are required to be arbitrated.[2]
3. Defendant was granted relief from the automatic stay to pursue counterclaims against Plaintiff. [Doc. 220].
4. That Order provided that if Barnhill won in arbitration that it shall have an allowed unsecured claim for said amount in JSmith's bankruptcy.
5. Plaintiff's claims in this lawsuit are not within the scope of the arbitration agreement between the parties.
6. Plaintiff's claims in this lawsuit relate to conduct of Barnhill pre-contract formation (on or before September 27, 2021).
7. The Order Confirming JSmith's Bankruptcy Plan was entered on September 19, 2024. [Doc. 426].
8. No payments have been made to unsecured creditors in JSmith's bankruptcy, nor has the Plan been substantially consummated.

### a. **THIS MATTER IS CORE**

There is no dispute that this Court has jurisdiction to hear all "core" proceedings. Core proceedings include, but are not limited to

(A) matters concerning the administration of the estate
(B) allowance or disallowance of claims against the estate;
(C) counterclaims by the estate against persons filing claims against the estate;
(G) motions to terminate, annul, or modify the automatic stay;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

28 U.S.C. § 157.

---

[1] The proof of claim was knowingly false as it did not account for deductive change orders agreed to by JSmith and Barnhill.
[2] It should be noted that the arbitration hearing has been continued twice at the request of Barnhill. Plaintiff can provide evidence of those requests if they are disputed by Barnhill

**28 U.S.C. § 157(b)(2)(B):** Core proceedings include allowance or disallowance of claims against the estate. While not directly affecting Barnhill's proof of claim, this matter, if successful, would operate as an offset or setoff to Barnhill's proof of claim. The outcome of the proceeding may affect how the assets of the estate are distributed. In re Gunter, 410 B.R. 178, 181 (Bankr. E.D.N.C. 2008)(finding matter core proceeding where outcome of the proceeding may affect how the assets of the estate are distributed). If JSmith prevails in this matter then Barnhill will likely not receive any funds as an unsecured creditor, even if Barnhill is successful in the arbitration, and other unsecured creditors will receive more.

> The Debtor shall pay the holders of Claims in this Class, consistent with the Liquidation Analysis attached as an Exhibit to the Disclosure Statement, the aggregate sum of $500,000.00 (the "Total Unsecured Dividend"), in twenty (20) installments over a period of five (5) years

[Doc. 426, Order Confirming Plan, Class 18 (General Unsecured Claims)]; In re Ormond, No. 12-05489-8-SWH, 2015 Bankr. LEXIS 653, at *10-11 (Bankr. E.D.N.C. Mar. 3, 2015).

Designating the allowance or disallowance of a claim as a core proceeding is consistent with 11 U.S.C. § 502(b), which requires the bankruptcy court, upon objection to a proof of claim, to determine the amount of such claim as of the date of the bankruptcy filing. Ardan Dev. Corp. v. Touhey (In re Newell), 424 B.R. 730, 734 (Bankr. E.D.N.C. 2010). When a creditor files a proof of claim in a debtor's bankruptcy case, that creditor consents to the equitable jurisdiction of the bankruptcy court. Id.

> [I]t is axiomatic that filing a proof of claim triggers the claims allowance process . . . which, by its very nature, is a 'core' proceeding that can *only* arise in a [T]itle 11 case."). Thus, even where a bankruptcy court would not have jurisdiction over proceedings filed in state court, it has core jurisdiction over related proofs of claim filed against the bankruptcy estate. The process of allowing or disallowing those claims is "core" because that process can only arise in the context of bankruptcy.

Ardan Dev. Corp. v. Touhey (In re Newell), 424 B.R. 730, 735 (Bankr. E.D.N.C. 2010). Once a court has jurisdiction over a matter, it holds and continues to hold jurisdiction over any distribution or

4

restrictions concerning the net recovered proceeds recovered as well. Dupree Farms, LLC v. Producers Agric. Ins. Co. (Dupree Farms, LLC), Nos. 18-00216-5-JNC, 19-0164-5-JNC, 2024 Bankr. LEXIS 1321, at *29 n.21 (Bankr. E.D.N.C. June 6, 2024). This is a core proceeding since it may impact "allowance or disallowance of claims against the estate."

**28 U.S.C. § 157(b)(2)(C):** This matter constitutes a counterclaim by JSmith against Barnhill, a statutorily core proceeding under 28 U.S.C. § 157(b)(2)(C). There remains a question as to whether the counterclaim is constitutionally core. Stern v. Marshall, 564 U.S. 462, 462, 131 S. Ct. 2594, 2595 (2011). Kozec v. Murphy (In re Murphy), 569 B.R. 402, 411 (Bankr. E.D.N.C. 2017) is instructive. Judge Warren held that despite having statutory authority under 28 U.S.C. § 157(b)(2)(C), a bankruptcy judge lacks constitutional authority to adjudicate a state law counterclaim by the debtor against an entity which files a proof of claim in the case unless that counterclaim "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." It appears as if Plaintiff's claim is not constitutionally core although Judge Warren did find a similar claim "related to" the bankruptcy case. Kozec v. Murphy (In re Murphy), 569 B.R. 402, 411 (Bankr. E.D.N.C. 2017).

**28 U.S.C. § 157(b)(2)(O) / (A):** Other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship are core proceedings, as are matters concerning the administration of the estate. This matter clearly relates to the adjustment of the debtor-creditor relationship, and concerns the administration of the estate. In re Stokes, No. 21-01615-5-JNC, 2022 Bankr. LEXIS 1798, at *8 (Bankr. E.D.N.C. June 9, 2022)(finding matter core where it seeks determination of rights regarding and concerning matters affecting the administration of estate property, and it affects rights regarding the amount, status and priority of claims requiring review and adjustment of the debtor-creditor relationship under the Bankruptcy Code).

> If Ms. Puls were to prevail in the adversary proceeding, however, Sun Trust would be the largest unsecured creditor of the estate, and its claim would certainly affect any distribution received by the other unsecured creditors. Accordingly, in addition to being a core proceeding under 28 U.S.C. § 157(b)(2)(K), the adversary

proceeding is also a core proceeding under § 157(b)(2)(A) (matters concerning the administration of the estate), § 157(b)(2)(B) (allowance or disallowance of claims against the estate), and § 157(b)(2)(O) (other proceedings affecting the adjustment of the debtor-creditor relationship)

In re Gunter, 410 B.R. 178, 181 (Bankr. E.D.N.C. 2008): In re Ormond, No. 12-05489-8-SWH, 2015 Bankr. LEXIS 653, at *10 (Bankr. E.D.N.C. Mar. 3, 2015). Barnhill's claim has not been decided. Accordingly, it is still unknown what percentage of the unsecured creditors pot that Barnhill and other unsecured creditors are entitled to. That decision is ultimately up to this Court, making this matter a core proceeding.

### b. DEFENDANT'S ASSERTION THAT THE ESTATE CEASES TO EXIST UPON CONFIRMATION IS A RED HERRING[3]

In support of its assertion that there is no subject matter jurisdiction, Defendant cites several cases for the proposition that once a plan is confirmed, the outcome of a post-confirmation proceeding cannot affect the bankruptcy estate. Defendant's citation of cases for the proposition that the bankruptcy estate ceases to exist is misleading and a red herring that is not directly important for the Court's analysis on whether subject matter jurisdiction exists.

**Defendant's Case:** In re Craig's Stores of Texas, Inc., 266 F.3d 388, 390 (5th Cir. 2001)

The application of Craig's Stores finding that there was no subject matter jurisdiction has been limited to its specific facts. The case was distinguished by the Firth Circuit in Newby.

> The plaintiff in Craig's Stores filed a breach of contract action in the bankruptcy court eighteen months after the court had approved the reorganization plan. The Craig's Stores Court held that there was no bankruptcy jurisdiction over such an action and dismissed. Craig's Stores, 266 F.3d at 389. Three factors were critical to its decision: first, the claims at issue "principally dealt with post-confirmation relations between the parties;" second, "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization;" and third, "no facts or law deriving from the reorganization or the plan [were] necessary to the claim." Craig's Stores, 266 F.3d at 391.

---

[3] The term "red herring" originates from a historical practice of using strong-smelling smoked herring to train hunting dogs, diverting them from the intended scent trail.

> Notwithstanding its statement that bankruptcy jurisdiction exists after plan confirmation only "for matters pertaining to the implementation or execution of the plan," the facts in Craig's Stores were narrow; they involved post-confirmation claims based on post-confirmation activities. Id. at 390. Thus, Craig's Stores does not conflict with Celotex because the Craig's Stores decision did not *divest* the bankruptcy court of jurisdiction over any claims. See id. at 390; see Celotex, 124 F.3d at 626 (holding that events cannot divest a court of jurisdiction over claims within "related to" jurisdiction). The Craig's Stores Court did hold [**20] that a bankruptcy court may *lack* jurisdiction over post-confirmation claims based on post-confirmation activities, but the Craig's Stores Court did not hold that a bankruptcy court may *lose* jurisdiction over pre-confirmation claims based on pre-confirmation activities, like those in this case. See Craig's Stores, 266 F.3d at 389-90

Newby v. Enron Corp. (In re Enron Corp. Sec.), 535 F.3d 325, 335 (5th Cir. 2008). The 5th Circuit's decision in Craig Stores has been distinguished by several of the district courts. Brickley v. ScanTech Identification Beams Sys., LLC, 566 B.R. 815, 830 (W.D. Tex. 2017)("the deciding factor is whether antagonism existed between the parties as of the date of reorganization. Other district courts have found that where litigation exists prior to confirmation, antagonism also clearly exists"); In re Educ. Res. Inst., Inc., 442 B.R. 20, 24 (Bankr. D. Mass. 2010)(finding subject matter jurisdiction: in contrast to cases where courts have found no bankruptcy court jurisdiction over post-confirmation disputes, the dispute here (1) arose entirely pre-confirmation; (2) directly effects the prospects for the newly reorganized TERI; (3) was specifically identified during the Plan confirmation process; and (4) was brought before the court for resolution less than a week after the Confirmation Order entered).

**Defendant's Case:** Fairfield Communities v. Daleske (In re Fairfield Communities), 142 F.3d 1093, 1095 (8th Cir. 1998) has similarly been limited to its facts.

> Defendants draw their narrow test from the Eighth Circuit's Fairfield Communities decision. That case involved claims against a bankrupt debtor that arose from the debtor's post-confirmation conduct. Id. at 1095. The Eighth Circuit stated the general principle that a bankruptcy court could retain post-confirmation jurisdiction "over aspects of a plan related to its administration and interpretation" by explicitly providing for such continuing jurisdiction in the confirmation order. [*7] Id. (quoting Norwest Equip. Fin., Inc. v. Nath, 91 F.3d 1072, 1074 (8th Cir. 1996)). In the Fairfield Communities case, the bankruptcy court retained jurisdiction "over cases involving the enforcement of the plan." Id. As the Eighth Circuit put it, the resolution of that question required determining when the claims arose: "this case

7

could involve [enforcement of] the plan only if the [creditors'] claims arose before the plan's confirmation." Id. at 1095. Because the creditors' claims solely involved the debtor's post-confirmation conduct, the Eighth Circuit held that those claims did not involve enforcement of the plan and that there was therefore no bankruptcy jurisdiction over them.

Fairfield Communities presented a far different situation than is presented in the RFC cases. The Bankruptcy Court in RFC's bankruptcy proceedings retained "exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan . . . including jurisdiction . . . to hear and determine any Causes of Action preserved under the Plan." RFC's bankruptcy plan specifically contemplates post-confirmation litigation and preserved jurisdiction over that litigation. See In re RFC, 2015 U.S. Dist. LEXIS 64546, 2015 WL 2373401, at *5 ("The Plan expressly preserved RFC's claims [against the banks] and transferred them to ResCap to pursue.") Moreover, "[t]he very purpose of these actions is to prosecute those [preserved] claims." Id.

ResCap Liquidating Tr. v. U.S. Bank, N.A., No. 16-4067 (PAM/HB), 2017 U.S. Dist. LEXIS 86661, at *6-8 (D. Minn. June 5, 2017)(internal citations omitted).

### c. AT THE VERY LEAST, THERE IS "RELATED TO" JURIDICTION IN THIS MATTER

The customary articulation of the test for determining whether a civil proceeding is "related to" bankruptcy is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, 743 F.2d at 994. An action is "related to" bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action, either positively or negatively, and which in any way impacts upon the handling and administration of the bankruptcy estate. Id. On the other hand, "[j]urisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist." Id. The First, Fourth, Sixth, Ninth, Tenth, and Eleventh Circuits have adopted the "related to" test with little or no variation.

In re Goldberg, No. 18-03592-5-JNC, 2020 Bankr. LEXIS 869, at *10 (Bankr. E.D.N.C. Mar. 27, 2020); Kozec v. Murphy (In re Murphy), 569 B.R. 402, 414 (Bankr. E.D.N.C. 2017).

Defendant cites to In re Resorts Intern., Inc. 372 F.3d 154 (3rd Cir. 2004) and Valley Historic Ltd. Partnership v. Bank of New York, 486 F.3d 831 (4th Cir. 2007) in support of their finding of a lack of "related to" subject matter jurisdiction.

This Court has previously had occasion to distinguish the holdings in those two cases. In Dupree Farms, this Court applied the six-factor Avado Brands test and found that the factors weighed in favor of exercising post-confirmation related to jurisdiction over the case because there was a "close nexus" between the adversary proceeding and the underlying bankruptcy case. In Dupree Farms, this Court found that subject matter jurisdiction existed where (i) the claims arose pre-confirmation during the bankruptcy case, (ii) creditors were aware of the potential claims pre-confirmation, and (iii) the plan had not yet been substantially consummated when the adversary proceeding was filed just months after confirmation. All of those same facts exist in this case. In this matter (i) creditors were aware of claims by JSmith against Barnhill, (ii) the conduct at issue occurred pre-confirmation, and (iii) the plan had not yet been substantially consummated.

> When jurisdiction is not obvious in a post confirmation action, bankruptcy courts of this circuit have previously adopted, and this court will use, a six-factor test to analyze whether a close nexus is presented:(1) When the claim at issue arose; (2) what provisions in the confirmed plan exist for resolving disputes and whether there are provisions in the plan retaining jurisdiction for trying these suits; (3) whether the plan has been substantially consummated; (4) the nature of the parties involved; (5) whether state law or bankruptcy law applies; and (6) indices of forum shopping.

Dupree Farms, LLC v. Producers Agric. Ins. Co. (Dupree Farms, LLC), Nos. 18-00216-5-JNC, 19-0164-5-JNC, 2024 Bankr. LEXIS 1321, at *26-27 (Bankr. E.D.N.C. June 6, 2024). An analysis of these six factors should lead to the same result as in Dupree Farms.

**(1) When the Claim at Issue Arose / (4) The Nature of the Parties Involved:**

The allegations in the Complaint are clear that Plaintiff is "only asserting claims for pre-contract conduct of the Defendant."[4] [Complaint, ¶10] Moreover, Defendant seems to acknowledge that fact in its brief, although its statement is incorrect legally and factually. "[T]his new action against Barnhill before this Court are based on the same set of facts as the suit that is currently being arbitrated outside of this Court") [Defendant's Memo: Doc. 9, p. 2, ll 5.-6]

---

[4] The contract was executed on September 27, 2021.

9

> Unlike Valley Historic or Resorts Int'l, here the cause of action [based on misrepresentations] arose preconfirmation. Consequently, the court finds that the first and fourth factors weigh strongly towards finding a close nexus.

Dupree Farms at *27.

### (2) What provisions in the confirmed plan exist for resolving disputes and whether there are provisions in the plan retaining jurisdiction for trying these suits:

"Good plan language can preserve and clarify for notice purposes already existing jurisdiction post confirmation." Dupree Farms at *28. In this matter, Plaintiff disclosed that it had claims against Barnhill Contracting and estimated the value of the claims. [Doc. 297].

> A close examination of paragraphs 4 and 8 from Article XIV of the Plan reveals Debtor's intent, incontestably known to ProAg and other interested parties prior to and at confirmation, to retain jurisdiction over this heavily discussed postpetition, preconfirmation cause of action. Among other things, Article XIV retains jurisdiction to "(4) determine all controversies and disputes arising under or in connection with the Plan;" and (8) to determine all disputes regarding property of the estate

Id. The Confirmed Plan provided that the Bankruptcy Court would retain jurisdiction over

1) To determine any and all objections to the allowance of Claims and Interest.
3) To determine all controversies and disputes arising under or in connection with the Plan, and applications, adversary proceedings and litigated matters pending on the Confirmation Date.

[Doc. 426]. In this matter, the litigation between Plaintiff and Barnhill was in existence at the time of the bankruptcy petition, and this Court specifically ordered that Barnhill's counterclaims would be arbitrated. Barnhill can not feign surprise that additional claims might be brought against it, especially after the production of internal emails at Barnhill which clearly support Plaintiff's extra-contractual and non-arbitrable claims. The ongoing litgiation between Barnhill and Plaintiff was disclosed in Plaintiff's Schedules, and "litigation by ambush" has not been perpretated here. [Doc. 68, p. 150]. This lawsuit is in essence an Amendment to the previous claims filed by Plaintiff against Barnhill prior to the bankruptcy, with additional claims that must be heard in court since they are not arbitrable.

### (3) Whether the plan has been substantially consummated:

There is also no dispute that the plan has not been substantially consummated.

> "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of the requisite payments called for under the Plan to all Classes.

[Doc. 428 p. 16]. The first payment due unsecured creditors is June 30, 2025. [Doc. 428 p. 64].

**(5) Whether state law or bankruptcy law applies:**

There is no dispute that Plaintiff's claims are state law claims, but that issue is not dispositive.

**(6) Indices of forum shopping:**

There is no accusation of forum shopping. Plaintiff wants its claims heard and the Bankruptcy Court is the proper forum for this matter to be heard.

As this Court indicated in Dupree Farms,

> The present case is factually distinguishable from Valley Historic, where that adversary proceeding was filed more than two years post confirmation; apparently was not known to exist at plan confirmation and therefore could not be a consideration of creditors in supporting a plan; and the plan was substantially consummated well before that adversary proceeding was filed. In fact, in Valley Historic, the debtor had already paid all allowed claims of its creditors prior to filing the adversary proceeding. Valley Historic, 486 F.3d at 837. Because the creditors had already been paid there, the bankruptcy estate (as opposed to the surviving debtor entity) had no interest in the outcome. The Valley Historic court accordingly held that it was impossible for a "close nexus" between the adversary proceeding and the confirmed plan to exist. In contrast, here, the adversary proceeding was filed just months after confirmation, because the causes of action were known at the time of confirmation but held up in the Policy and Claim determination process for another two to three months…
>
> This adversary proceeding is also distinguishable from In re Resorts Int'l, Inc., 372 F.3d 154. Resorts Int'l involved a litigation trust established in the confirmed plan bringing an accounting malpractice action against the accounting firm that provided tax advice and account services to the trust. All of the material actions leading to the alleged malpractice occurred post confirmation, and the adversary proceeding was brought almost seven years following plan confirmation. In contrast, the adversary proceeding here was brought a few months after confirmation and involved entirely preconfirmation actions concerning the Policy for 2018 crops farmed during the pendency of the bankruptcy case. Dupree Farms, a debtor-in-possession as defined in section 1101 of the Bankruptcy Code, remained subject to bankruptcy court oversight and scrutiny during the chapter 11 process…
>
> Considering the totality of the circumstances, a close nexus exists between this adversary proceeding and the chapter 11 case and its confirmed plan. Therefore,

11

>this court holds sufficient related to jurisdiction over the claims in this adversary proceeding. For the foregoing reasons, the Motion is DENIED.

Id. at *33-36. A similar result was reached by this Court in Waldrep v. Est. of Nusbaum (In re CAH Acquisition Co. #1, LLC), Nos. 19-00730-5-JNC, 21-00078-5-JNC, 19-01230-5-JNC, 21-00079-5-JNC, 19-01180-5-JNC, 21-00080-5-JNC, 19-01300-5-JNC, 21-00081-5-JNC, 19-01298-5-JNC, 21-00082-5-JNC, 19-01697-5-JNC, 21-00083-5-JNC, 19-01227-5-JNC, 21-00084-5-JNC, 2022 Bankr. LEXIS 2597, at *32-36 (Bankr. E.D.N.C. Sep. 22, 2022). In that case, just as in this one: (i) the claims arose from prepetition activity and (ii) the plan was not substantially consummated. A similar analysis was used by the District Court in Keesee v. Mitchell, 623 B.R. 402, 411-13 (E.D.N.C. 2020).

This Court's Order on Granting Barnhill's Motion for Relief from the Automatic Stay also provided as follows:

>4. This Court shall retain its jurisdiction to interpret, implement, and enforce the provisions of this Order.

[Doc. 220].

A finding of lack of subject matter jurisdiction would also result in a finding that Barnhill has no right to offset from this lawsuit any amount that may be owed Barnhill, or that they would be in violation of the automatic stay if they did so. While Defendant has not filed an answer it is anticipated that Defendant will raise setoff as a defense in the case. It is inherently within the core jurisdiction of this Court to determine whether that setoff defense may exist. 28 U.S. Code § 157. Claims under 11 U.S.C.S. § 553 are statutorily and constitutionally core. Camac Fund, L.P. v. McPherson (In re McPherson), 630 B.R. 160, 164 (Bankr. D. Md. 2021). Barnhill cannot have it both ways.

The Bankruptcy Code "centralize[s] disputes over the debtor's assets and obligations in one forum [to] protect[] both debtors and creditors from piecemeal litigation and conflicting judgments." Id. In other words, "ease and centrality of administration are [] foundational characteristics of bankruptcy law." Guthrie v. PHH Mortg. Corp., 79 F.4th 328, 338 (4th Cir. 2023). There is subject

matter jurisdiction in this matter since (i) creditors were aware of claims by JSmith against Barnhill, (ii) Barnhill filed a proof of claim, (iii) the conduct at issue occurred pre-confirmation, (iv) Barnhill will likely assert a setoff defense, and (v) the plan had not yet been substantially consummated.

## II. TO THE EXTENT THE COURT DETERMINES THAT THERE IS NO SUBJECT MATTER JURISDICTION THEN ANY DISMISSAL OF THE CASE MUST BE WITHOUT PREJUDICE

Defendant contends in its Principal Brief that this matter should be dismissed with prejudice if the Court finds a lack of subject matter jurisdiction. However, the black letter case law prohibits that. S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013)(remading to require that a dismissal as to lack of subject matter jurisdiction be without prejudice). A dismissal for lack of subject matter jurisdiction must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits. *See* Fed. R. Civ. P. 41(b); Goldman v. Brink, 41 F.4th 366, 369 (4th Cir. 2022); Ali v. Hogan, 26 F.4th 587, 600 (4th Cir. 2022); Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-94 (1998); Interstate Petroleum Corp. v. Morgan, 249 F.3d 215, 222 (4th Cir. 2001) (en banc); *see also* Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims."); Frederiksen v. City of Lockport, 384 F.3d 437, 438 (7th Cir. 2004) ("A suit dismissed for lack of jurisdiction cannot also be [**20] dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render. . . . 'No jurisdiction' and 'with prejudice' are mutually exclusive"; Myles v. Thompson, No. 25-1069, 2025 U.S. App. LEXIS 12224, at *1-2 (4th Cir. May 20, 2025); Wrenn v. Williamson, No. 24-1686, 2025 U.S. App. LEXIS 822, at *1-2 (4th Cir. Jan. 14, 2025)

This Court cited that same black letter law in dismissing a case without prejudice based on lack of subject matter juridiction.  Hoch v. Hoch (In re Hoch), 577 B.R. 202, 226-27 (Bankr. E.D.N.C. 2017)

## CONCLUSION

For the reasons specific above, Defendant's Motion to Dismiss based on lack of subject matter jurisdiction should be denied.

Respectfully submitted this, the  26th day of June, 2025

> **BUCKMILLER & FROST, PLLC**
> BY:  s/Matthew W. Buckmiller
> MATTHEW W. BUCKMILLER, NCSB No. 35194
> mbuckmiller@bbflawfirm.com
> 4700 Six Forks Road, Suite 150
> Raleigh, North Carolina 27609
> TEL:   (919) 296-5040
> *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is, and at all times hereinafter was, more than eighteen (18) years of age, and on this date, a true and accurate copy of the foregoing **MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 12(b)(1) MOTION TO DISMISS** was electronically filed utilizing the CM/ECF system, notification of which was remitted to the following ECF participants:

> James Livermon, III
> R. Jason Herndon

Respectfully submitted this, the  26th day of June, 2025

>
> **BUCKMILLER & FROST, PLLC**
> BY:  s/Matthew W. Buckmiller
> MATTHEW W. BUCKMILLER, NCSB No. 35194
> mbuckmiller@bbflawfirm.com
> 4700 Six Forks Road, Suite 150
> Raleigh, North Carolina 27609
> TEL:   (919) 296-5040
> FAX:   (919) 977-7101
> *Attorneys for Plaintiff*