UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

```
------------------------------------------------------- x
In re:                                                  :
                                                        :    Chapter 11
JSMITH CIVIL, LLC                                       :
                                                        :    Case No.: 23-02734-5-JNC
                       Debtor.                          :
                                                        :
------------------------------------------------------- x
                                                        :    Adversary Case No. 25-00084-5-JNC
JSMITH CIVIL, LLC                                       :
                                                        :
                                                        :
                       Plaintiff,                       :
   v.                                                   :
                                                        :
BARNHILL CONTRACTING COMPANY                            :
                                                        :
                       Defendant.                       :
--------------------------------------------------------x
```

**REPLY IN SUPPORT OF DEFENDANT BARNHILL CONTRACTING COMPANY'S MOTION TO DISMISS**

Defendant Barnhill Contracting Company ("Barnhill" or "Defendant"), through its undersigned counsel, respectfully submits this Reply in Support of Defendant Barnhill Contracting Company's Motion to Dismiss in response to Plaintiff JSmith Civil, LLC's ("JSmith" or "Plaintiff" and together with Barnhill, the "Parties") Memorandum in Opposition to Barnhill's Rule 12(b)(1) Motion to Dismiss and states:

**I.    THE PROCEEDING IS NOT CORE WITHIN THE MEANING OF 28 U.S.C. 157(B)(2).**

Plaintiff's opposition to the Motion to Dismiss argues that this Court has jurisdiction over the claims asserted in the instant proceeding because they are "core" claims within the meaning of

1

28 U.S.C. § 157(b)(2)(B) and (C). A plain reading of the statutes, which Plaintiff fails to provide, explicitly states otherwise.

**28 U.S.C. § 157(b)(2)(B)**: "Core proceedings include . . . allowance or disallowance of claims against the estate or exemptions from property of the estate . . . ."  However, this adversary proceeding will not affect the allowance or disallowance of claims against the estate. Claims are deemed allowed unless and until a party-in-interest objects. 11 U.S.C.A. § 502(a).  The claims allowance process is set in motion by an objecting party who "carries the initial burden to produce some evidence to overcome" this rebuttable presumption.  *In re Vanhook*, 426 B.R. 296, 298-99 (Bankr. N.D. Ill. 2010). As Plaintiff cites in its opposition, filing a proof of claim triggers the claims allowance process, necessarily over the claim that was filed. *Ardan Dev. Corp. v. Touhey* (*In re Newell*), 424 B.R. 730, 735 (Bankr. E.D.N.C. 2010).

Plaintiff is not attacking Barnhill's Claim nor asking the Court to allow or disallow it.  No objection to Barnhill's claim was filed nor do any of the causes of action seek to modify Barnhill's claim in any way, whether it be a disallowance or adjustment. Conversely, Plaintiff admits in its response that the allegations and causes of action in the Complaint are based on a completely separate transaction and occurrence.  If Plaintiff intended to object to Barnhill's claim, it was required to do so by filing an objection to its claim before the claims objection bar date back on February 1, 2025, which was proposed by the Plaintiff itself in its Chapter 11 Plan of Reorganization (the "Plan"). See Ch. 11 Plan [ECF No. 296].

Plaintiff cites to *In re Gunter* to support its assertion that this proceeding involves the allowance or disallowance of claims against the estate.  There, this Court held that an adversary proceeding that could potentially affect the distribution to unsecured creditors was "core" under § 157(b)(2)(B), but Plaintiff fails to acknowledge that the adversary proceeding in *Gunter* was

2

brought *after* an objection was made to the claim and that the adversary proceeding was one to quiet title in property of the estate. The court was tasked with deciding whether a judgment lien attached to a property that was later financed by a lender and conveyed upon the Ms. Gunter had been levied upon before the conveyance. *In re Gunter*, 410 B.R. 178 (Bankr. E.D.N.C. 2008). All parties agreed that such a proceeding was core under the plain language of 28 U.S.C. § 157(b)(2)(K) because it sought to determine who had an interest in the property. The court's exercise of jurisdiction in that matter did indeed affect the distribution of the estate because it necessarily determined the amount to be distributed to unsecured creditors.  Unlike in *Gunter*, the outcome of this adversary proceeding does not have a negative effect on other unsecured creditors nor the administration of the estate.

**28 U.S.C. § 157(b)(2)(C)**: "Core proceedings include . . . counterclaims by the estate against persons filing claims against the estate." In its opposition, Plaintiff declares that this adversary proceeding "constitutes a counterclaim by Plaintiff against Barnhill" but provides no justification for such an assertion. Any "claim" to which the institution of this adversary proceeding could run "counter" is Barnhill's claim in this bankruptcy case evidenced by Proof of Claim No. 63-1 ("Barnhill's Claim").

Filing a proof of claim does not confer jurisdiction to the Bankruptcy Court over any possible cause of action that could be brought by a debtor against the filer of the proof of claim. "Counterclaims" within the meaning of § 157(b)(2)(C) must be based on the same operative facts underlying the proof of claim *and* resolve the allowance or disallowance of that claim. This is because, as the Supreme Court reasoned "core" jurisdiction not existing to resolve the counterclaim in *Stern*, "[t]here was never any reason to believe that the process of adjudicating [the creditor in *Stern*]'s proof of claim would necessarily resolve [the debtor]'s counterclaim." In

3

other words, when the "counterclaim," even if based on the same set of facts as the claim, would not resolve an objection to the claim itself, it is not core.

The Ninth Circuit clarified this when *Stern* was remanded. The Ninth Circuit concluded that the counterclaim at issue there was merely "related to" (non-core) the bankruptcy because it was compulsory and "because the operative facts underlying [the debtor's] action are the same as those underlying the [proof of] claim." *In re Marshall*, 600 F.3d 1037, 1057 (9th Cir. 2010) (internal punctuation and quotation marks omitted). When the Supreme Court sent *Stern* back to the Ninth Circuit, it did notaddress that the counterclaim was compulsory. It was Ninth Circuit's subsequent decision that reconciled the issue: "a counterclaim under § 157(b)(2)(C) is properly a 'core' proceeding arising in a case under the Code *only* if the counterclaim is so closely related to the proof of claim that the resolution of the counterclaim is necessary to resolve the allowance or disallowance of the claim itself." *Id.* (emphasis added). The Ninth Circuit's holding is essential to the interpretation of the Supreme Court's holding in *Stern* as well as thelegislative history of the issue.

This Court's holding in *Gunter* is consistent with *Stern*. This Court cannot exercise jurisdiction over this proceeding because the adjudicating the issues would not resolve any objection to Barnhill's Claim, even if there was one.

Even if the Court were to read *Stern* as narrowly as possible, this proceeding would still not be core within the meaning of § 157(b)(2)(C) because its resolution is not necessary to the claims allowance process. *Stern v. Marshall*, 564 U.S. 462, 504,131 S. Ct. 2594, 2620, 180 L. Ed. 2d 475, 506 ("The bankruptcy court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."); see also *Murphy v. Felice* (*In re Felice*), 480 B.R. 401, 416 (Bankr. D. Mass.

4

2012); *Paloian v. LaSalle Bank N.A.* (*In re Doctors Hosp. of Hyde Park, Inc.*), 2013 Bankr. LEXIS 3074, at *51–78 (Bankr. N.D. Ill. July 17, 2013); *First-Citizens Bank & Trust Co. v. Parker Med. Holding Co.* (*In re Parker Med. Holding Co.*), 2023 Bankr. LEXIS 850 (Bankr. N.D. Ga. Mar. 31, 2023); *Yaquinto v. JGB Collateral LLC* (*In re JRJr33, Inc.*), 2020 Bankr. LEXIS 3342 at *17 (Bankr. N.D. Tex. Nov. 30, 2020) (bankruptcy court can determine counterclaims to proofs of claim "that are inextricably intertwined with resolving the proofs of claim themselves" (emphasis in original)).

Further, asserting any subsection of § 157(b)(2)(B) and (C) confers jurisdiction over this proceeding ignores virtually all case law informing § 157's purpose and operation. Courts universally agree, and the Supreme Court has confirmed: "a core proceeding must "stem [] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern v. Marshall*, 564 U.S. 462 (2011); See, e.g., *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 96 (5th Cir.1987) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *Kozec v. Murphy* (In re Murphy), 569 B.R. 402 (Bankr. E.D.N.C. 2017); *J. Baranello & Sons, Inc. v. Baharestani* (*In re J. Baranello & Sons, Inc.*), 149 B.R. 19, 23 (Bankr. E.D.N.Y. 1992) ("Core proceedings include matters which were traditionally deemed inherently within the bankruptcy courts' jurisdiction."); *Acolyte Elec. Corp. v. City of New York* (*In re Acolyte Elec. Corp.*), 69 B.R. 155, 173 (Bankr. E.D.N.Y. 1986) ("To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement."), aff'd, No. 86–0329(JBW), 1987 WL 47763 (E.D.N.Y. Mar. 27, 1987). Here,

as Plaintiff acknowledged, its claims are based on state law and are in no way based in title 11 or arise only in bankruptcy.

**28 U.S.C. § 157(b)(O) / (A)**: "Core proceedings include . . . (A) matters concerning the administration of the case; [and] (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." Plaintiff erroneously states that Barnhill's claim has not been decided. That is legally and factually incorrect. As discussed above, Barnhill's claim is, in fact, an allowed claim. No objection to its claim was filed and the time period for filing an objection has passed. Barnhill will join the other holders of general unsecured claims to receive no less than what the Plan allows, a share of the $500,000 pot paid by the Plaintiff. Should Barnhill's claim offset any award to Plaintiff in this proceeding, other unsecured creditors would benefit from Barnhill's share of the pot. Importantly, there is no scenario by which unsecured creditors would get less or be harmed by the outcome of this proceeding. There is simply no effect on the administration of the estate and is thus not core.

    **II.    THIS PROCEEDING DOES NOT HAVE A SUFFICIENT NEXUS TO THE BANKRUPTCY TO ESTABLISH NON-CORE "RELATED TO" JURISDICTION.**

As this proceeding requires a post-confirmation determination of jurisdiction, this Court is bound only to the holding in *Celotex Corp. v. Edwards* 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) and *Valley Historic Ltd. Partnership v. Bank of New York,* 486 F.3d 831 (4th Cir. 2007), which adopts the holding in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1985), to determine whether the Court has "related to" jurisdiction over this proceeding. It is important to not only reiterate why *Pacor* is essential but to also clear the air on Plaintiff's categorization of the Third Circuit's holding in *Pacor* as a "red herring." This is simply not an adversary proceeding brought by the Debtor to put the monies realized by such a proceeding into the estate and available

to creditors. To the contrary, there is no longer an estate by operation of confirmation, which is exactly why any funds realized by the Plaintiff related to this proceeding will go straight into the Plaintiff's pocket. The Bankruptcy Court does not exist to provide a comfortable place for any given individual or entity to bring its claims against others. For the Bankruptcy Court to adjudicate a matter post-confirmation it must affect the interpretation, implementation, consummation, execution, or administration of a confirmed plan. Plaintiff's plea for the Court to ignore this important distinction set out in *Pacor* and followed by countless others does not make it meaningless; it is absolutely required by the standard adopted by the Fourth Circuit.

In an attempt to persuade this Court to hang on to jurisdiction by a holographic thread, Plaintiff argues that the outcome will have an effect on the Plan because unsecured creditors could potentially receive more if Barnhill's claim is satisfied through setoff. Plaintiff again turns to *In re Gunter*, where this Court's determination of the creditor's unsecured or secured status materially affected the distribution of creditors under the plan. Aside from the other issues with relying on *In re Gunter* that Barnhill has already discussed, the effect is completely different here. The Plan provides for a $500,000.00 pro rata distribution to unsecured creditors. If Barnhill is determined, by exercising its right to set off (which it has not done), to no longer have a claim to its pro rata share, other unsecured creditors who already expect to receive pennies on the dollar, may receive marginally more. This is simply not enough to confer jurisdiction onto this Court over this matter.

Following *Pacor*, the Third Circuit held that even where an award in an adversary proceeding may have an effect on the estate that amounts to a possible redistribution of plan funds, there is not a sufficient nexus because the outcome of the litigation would be incidental to the bankruptcy process. *In re Resorts*, 372 F.3d 154, 170 (3rd Cir. 2004). The court ruled that, for jurisdiction to exist, there must be a "substantial effect on the success of the plan." In its opposition

here, Plaintiff does not dispute that proceeds from this proceeding would not augment the estate, nor that such an award would result in a windfall to the Plaintiff, they only contend that potential setoff would reduce Barnhill's claim and thus afford other unsecured creditors a greater distribution. Had Plaintiff timely objected to Barnhill's claim, any effect this adversary proceeding might have on this claim could only be affected by Barnhill exercising its right to set off. Even further, that effect would be di minimis if having an effect at all, as discussed *supra*. The reality is there is actually no effect this proceeding will have on the Plan, and certainly not on the success of it.

Even if unsecured creditors were not limited to the $500,000.00 pot, as this Court appropriately held and followed in *Ohnmacht*, "the mere possibility of increasing the recovery to the creditors is insufficient, standing alone, to establish a 'close nexus.'" 2017 Bankr. LEXIS 3814 *20 (Bankr. E.D.N.C. 2017) (citing *Grathwol v. Coastal Carolina Developers, Inc.*, 2015 U.S. Dist. LEXIS 3113, at *13-14 (E.D.N.C. Jan. 9, 2015), aff'd *Grathwol v. Coastal Carolina Developers, Inc.* (In re Grathwol), 628 Fed. Appx. 193 (4th Cir. 2016); *Montana v. Goldin* (*In re Pegasus Gold Corp.*), 394 F.3d 1189, 1194 n.1 (9th Cir. 2005); *In re Resorts Intern., Inc.* 372 F.3d 154, 170 (3rd Cir. 2004); *BWI Liquidating Corp. v. City of Rialto* (*In re BWI Liquidating Corp.*), 437 B.R. 160, 166 (Bankr. D. Del. 2010)). That this proceeding will somehow affect the distributions to unsecured creditors is the **sole basis** by which Plaintiff argues this this Court has jurisdiction over the claims asserted in this proceeding. These are nothing but jurisdictional gymnastics.

Plaintiff anticipates that this Court will utilize the test promulgated in *Avado Brands, Inc. v. Dupree et. al*, 358 B.R. 868 (Bankr. N.D. Tex. 2006) as it did in *Dupree Farms, LLC v. Producers Agric. Ins. Co.* (*Dupree Farms, LLC*), Nos. 18-00216-5-JNC, 19-0164-5-JNC, 2024

8

Bankr. LEXIS 1321, at *26-27 (Bankr. E.D.N.C. June 6, 2024) to determine whether a sufficient nexus exists between the adversary proceeding and the bankruptcy case when "jurisdiction is not obvious in a post confirmation action." *Id.* The facts and circumstances surrounding this proceeding align so closely to the facts and circumstances in *Valley Historic*, such a test is not warranted.

In *Valley Historic*, the court found "no [] bankruptcy administration purpose to be served by the Plaintiff's adversary proceeding because the [p]lan made no provision for the use of any recovery from the adversary proceeding but instead provided for the satisfaction of the Plaintiff's obligations" entirely by post-petition rents and earnings from real estate business. This Court has followed *Valley Historic's* view when it held, and the Fourth Circuit affirmed, that "even when a plan is not substantially consummated, a post-confirmation adversary proceeding lacks a 'close nexus' to a plan or bankruptcy case if the plan contains no provision for the use of any recovery." *Ohnmacht v. Commercial Credit Grp., Inc.* (*In Re Ohnmacht*), Case No. 09-08106-8-DMW, 2017 Bankr. LEXIS 3814, at *25 (Bankr. E.D.N.C. 2017) (citing *Grathwol v. Coastal Carolina Developers, Inc.*, 2015 U.S. Dist. LEXIS 3113, at *13-14 (E.D.N.C. Jan. 9, 2015), aff'd *Grathwol v. Coastal Carolina Developers, Inc.* (*In re Grathwol*), 628 Fed. Appx. 193 (4th Cir. 2016).

Just as it is in *Valley Historic*, the Plan here provided for the satisfaction of the Plaintiff's obligations using proceeds from "actions to recover past-due prepetition accounts receivable and/or retainage[,]" not proceeds from any other litigation. Just as this Court found in *Grathwol* and its progeny, there is not a close nexus because the Plan contains no provision for the use of any recovery. There is no reason to go any further. There is no possible effect this proceeding might have on the interpretation, implementation, consummation, execution, or administration of the confirmed plan" required by *In re Resorts*. Indeed, the exercise of jurisdiction in this

9

proceeding would be in clear violation of *Celotex Corp. v. Edwards*: "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). Essentially, the Plaintiff seeks a discharge from this Court **and** for it to assist in achieving a windfall from which no creditors will ever benefit. No potential award from this proceeding is bound to pay any creditors at all. A proceeding that will have absolutely no effect on the bankruptcy does not belong in the bankruptcy court.

Even if it was not obvious this Court lacks jurisdiction over this proceeding from the holding in *Valley Historic*, Plaintiff still fails to satisfy the *Avado* factors. Importantly, creditors were not aware of these potential claims pre-confirmation as Plaintiff contends, and despite Plaintiff's erroneous assertions, the "ongoing litigation between Barnhill and Plaintiff" was *not* disclosed in Plaintiff's Schedules. A cursory review of Docket Entry 68, page 150, as Plaintiff cites, shows a legal action for collection, not the tort-based claims it alleges in the Complaint. No creditors, secured or unsecured, were aware that Plaintiff had the potential to receive an award of treble damages when the Plan was confirmed due to the nature of the claims. This Court distinguished *Dupree* from *Valley Historic* in that the claims in *Valley Historic* were "not known to exist at plan confirmation and therefore could not be a consideration of creditors in supporting a plan," just as it is here.

Plaintiff also tries to shoehorn jurisdiction by pointing to boilerplate language that reserved jurisdiction for this Court to determine objections to claims (that were never filed). Yet, even Plaintiff has conceded that this adversary proceeding has absolutely nothing to do with Barnhill's claims on entirely unrelated projects that Plaintiff abandoned midstream. Plaintiff also attempts to connect its jurisdictional wagon to the reservation of jurisdiction to controversies and disputes that arise under or in connection to the Plan, and applications, adversary proceedings and litigated

10

matters pending on the Confirmation Date.  As this Court observed in *Dupree Farms* and *Ohnmacht*, subject matter jurisdiction cannot be created by a plan provision. *Dupree Farms,* Case No. 19-0164-5-JNC, 2024 WL 28731 at *9 (Bankr. E.D.N.C. June 6, 2024 ("The Fourth Circuit has recognized this concept, stating '[N]either the parties nor the bankruptcy court can create 1334 jurisdiction by simply inserting a retention of jurisdiction provision in the plan of reorganization if jurisdiction is otherwise lacking.'") (quoting *Valley Historic*); *Ohnmacht*, 2017 Bankr. LEXIS 3814, *11.  Even if it could, clearly this adversary proceeding was not pending on the Confirmation Date nor does it relate to anything arising under or in connection to the Plan. And how could it, as Plaintiff asserts it discovered these alleged claims post-confirmation.

Next, Plaintiff relies on the Plan not being substantially consummated.  However, the Plan should now be substantially consummated as Plan payments to unsecured creditors began on June 30, 2025.  If the Plan was not substantially consummation at the outset of this adversary proceeding but now is, Fed. R. Civ. Pro. 12(h)(3) requires the Court to dismiss the action"[i]f the court determines at any time that it lacks subject-matter jurisdiction." *Ohnmacht,* 2017 Bankr. LEXIS 3814 *20 (Bankr. E.D.N.C. 2017).  Even if the Plan is not yet substantially consummated, this Court has held that "a post-confirmation adversary proceeding lacks a 'close nexus' to a plan or bankruptcy case if the plan contains no provision for the use of the recovery." *Id.* (citing *Grathwol v. Coastal Carolina Developers, Inc.*, 2015 U.S. Dist. LEXIS 3113, at *13-14 (E.D.N.C. Jan. 9, 2015), aff'd *Grathwol v. Coastal Carolina Developers, Inc. (In re Grathwol)*, 628 Fed. Appx. 193 (4th Cir. 2016); Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1194 n.1 (9th Cir. 2005) (increase in recovery to creditors insufficient to establish "close nexus").  As previously discussed, the Plan is silent as to any recovery from these claims and none will be distributed to creditors in the unlikely event of a recovery from Barnhill.

11

Finally, Plaintiff concedes its claims here are pure state law claims and have no relation to federal bankruptcy law.

Having shown the *Avado* factors weigh in favor of Barnhill, there is no other explanation for Plaintiff's strained attempt for jurisdiction in this Court: forum shopping.

## CONCLUSION

The Plaintiff is asking this Court to provide it a friendly forum in which to litigate issues that will have absolutely no effect on the bankruptcy process and will provide Plaintiff with the opportunity to receive a windfall of which no creditors were aware when they consented to the Plan. There are no provisions under 28 U.S.C. 157(b)(2) that support the assertion this matter is "core." Further, there is no mechanism by which this Court can assert jurisdiction over this proceeding as a non-core proceeding because the outcome will have no effect on the implementation, consummation, execution, or administration of the confirmed plan. Plaintiff intends to abuse this Court for its sole gain.

For the foregoing reasons, Defendant Barnhill Contracting Company respectfully submits that the Court dismiss the adversary proceeding with prejudice for lack of jurisdiction, that Barnhill should be AWARDED its reasonable attorney's fees and costs incurred in responding to the Complaint, and that this Court should GRANT Barnhill such other and further relief as justice so requires.

Dated: July 10, 2025            Respectfully submitted,

*/s/ James S. Livermon, III*
James S. Livermon, III (N.C. State Bar No. 26492)
Telephone: 919-755-2148
Email: Charlie.Livermon@wbd-us.com
Eudora F. S. Arthur (N.C. State Bar No. 59854)
Telephone: 919-755-2178
Email: Dorie.Arthur@wbd-us.com

       WOMBLE BOND DICKINSON (US) LLP
       555 Fayetteville Street, Suite 1100
       Raleigh, North Carolina 27601

       and

       */s/ R. Jason Herndon*
       R. Jason Herndon (N.C. State Bar No. 33977)
       Telephone:  (919) 828-0564
       Email: jasonherndon@parkerpoe.com
       PARKER POE ADAMS & BERNSTEIN LLP
       PNC Plaza
       301 Fayetteville Street, Suite 1400
       Raleigh, NC 27601

       *Attorneys for Barnhill Contracting Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 10, 2025, a copy of the foregoing Memorandum of Law in Support of Motion to Dismiss was served on all counsel of record via this Court's CM/ECF electronic filing system.

>   Matthew W. Buckmiller, Esq.
>   Buckmiller & Frost, PLLC
>   4700 Six Forks Road, Suite 150
>   Raleigh, NC 27609

>   */s/ James S. Livermon, III*
>   James S. Livermon, III

WBD (US) 4913-7554-5683