**SO ORDERED.**

**SIGNED this 17 day of September, 2025.**



_____
Joseph N. Callaway
United States Bankruptcy Judge

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# NEW BERN DIVISION

IN RE:

JSMITH CIVIL, LLC,   Case No. 23-02734-5-JNC
                     Chapter 11
    Debtor.

_____

JSMITH CIVIL, LLC,

    Plaintiff,

v.   Adv. Pro. No. 25-00084-5-JNC

BARNHILL CONTRACTING COMPANY,

    Defendant.

### ORDER ON MOTION TO DISMISS

The matter before the court is the Motion to Dismiss for lack of subject matter jurisdiction (Dkt. 8, the "Motion") filed by defendant Barnhill Contracting Company ("Barnhill") along with its memorandum in support (Dkt. 9). Plaintiff JSmith Civil, LLC ("Plaintiff" or "JSmith") filed a memorandum in opposition (Dkt. 11, the "Response"). Barnhill filed a reply brief (Dkt. 12, the

"Reply"). This matter was noticed, and a hearing was held on August 6, 2025 in Greenville, North Carolina. Attorneys Matthew Buckmiller appeared for JSmith, and James S. Livermon appeared for Barnhill.

## PROCEDURAL HISTORY

JSmith is a chapter 11 debtor before this bankruptcy court, having filed its voluntary petition (BK Dkt. 1) on September 19, 2023. In due course, its chapter 11 plan of reorganization was approved on September 19, 2024 (BK Dkt. 426, the "Plan"). Among other things, the Plan permitted JSmith to pursue litigation in the bankruptcy court post-confirmation.[1] JSmith's chapter 11 case remains open and active with the bankruptcy court as this matter proceeds.

## BACKGROUND

JSmith is a subcontractor that contracted with Barnhill, as the general contractor, to provide certain services at several different Barnhill construction sites. A dispute arose regarding JSmith's performance on a project commonly referred to as the 400H project, resulting in JSmith initiating a pre-petition state court lawsuit against Barnhill on November 29, 2022, in Wake County Superior Court, captioned *JSmith Civil, LLC v. Barnhill Contracting Company and Travelers Casualty and Surety Company of America*, Case No. 22 CV015003 (the "State Court Action"). The State Court Action was subsequently ordered to arbitration.

---

[1] The Plan provided:

> C. <u>Litigation Claims.</u> The Debtor intends to pursue, as a method by which to fund payments to Creditors under this Plan, the turnover and recovery of any amounts to which it is entitled, including but not limited to: (1) Tax credits from the Internal Revenue Service; (2) Prepetition accounts receivable from various third parties; and (3) Avoidance, recovery, and preservation for the benefit of the Estate, any payments and transfers pursuant to §§ 544, 547, and 548 of the Bankruptcy Code, as well as the Uniform Voidable Transactions Act, codified by the North Carolina General Assembly in N.C. Gen. Stat. § 39-23.1, *et seq*. (the "UVTA").

(Dkt 426 at 65.)

Eight months later, JSmith filed its chapter 11 petition. On January 3, 2024, this court granted Barnhill relief from the automatic stay so the arbitration could proceed, and further ruled that, to the extent the Arbitrator issues a final award granting Barnhill recovery of funds from Debtor, Barnhill would hold a corresponding unsecured claim in the bankruptcy case. (BK Dkt. 220 at 2).[2]

After the Plan was confirmed on September 19, 2024 (BK Dkt. 426), about seven months later, and more than two years after the filing of the State Court Action, on April 23, 2025, the complaint in this adversary proceeding was filed. In it, JSmith seeks recovery on claims for unfair and deceptive trade practices and fraud against Barnhill for actions JSmith asserts arise out of Barnhill's conduct related to the same 400H Project sent to arbitration in the State Court Action.[3] Defendant moved to dismiss pursuant to Rule 7012(b)(1) of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 12 of the Federal Rules of Civil Procedure. It argues the bankruptcy court lacks subject matter jurisdiction over the claims in this adversary proceeding because they were brought post confirmation. Plaintiff responds that the claims are core proceedings under 28 U.S.C. § 157 and that the claims have a sufficiently close nexus to the underlying chapter 11 bankruptcy proceeding to establish "related to" subject matter jurisdiction under 28 U.S.C. § 1334(b) and prevailing caselaw.

---

[2] Barnhill filed Proof of Claim 63-1 in the chapter 11 case on January 24, 2024, asserting an unsecured claim of $2,177,567.14. The arbitration in the State Court Action commenced on August 25, 2025. The court is informed that the arbitration was heard as scheduled, and that the arbitrator currently has the matter under advisement.

[3] The 400H Project contract between Plaintiff and Defendant provides that most disputes between the parties are required to be arbitrated, but in Section 28 excepts from arbitration claims for punitive damages, which JSmith asserts is the case for an unfair or deceptive trade practice. Whether this is indeed the case and whether a ruling in the arbitration for Barnhill or otherwise adverse to JSmith invokes issue preclusion or equitable defenses such as waiver, estoppel or laches is outside the confines of this jurisdictional dispute and are matters saved for another day.

3

## DISCUSSION

A. BANKRUPTCY COURT JURISDICTION GENERALLY

    1. Source

As with all federal courts, United States Bankruptcy Courts are courts of limited jurisdiction. Bankruptcy courts derive subject matter jurisdiction from the district courts, which "have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a); *see also* 28 U.S.C. § 157(a), (b)(1). "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Thus, whether preconfirmation or postconfirmation, bankruptcy court jurisdiction must be traced to 28 U.S.C. § 1334(b).

Under that statute, in bankruptcy cases, the federal district court, and derivatively the bankruptcy court by reference, hold subject matter jurisdiction only over civil proceedings that (i) arise under, (ii) arise in, or (iii) are related to a bankruptcy case. 28 U.S.C. § 1334(b). Congress intended to grant bankruptcy courts comprehensive jurisdiction over matters involving or affecting bankruptcy estates so that one court, the bankruptcy court, could deal "efficiently and expeditiously with all matters connected to the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (internal citations omitted). Because federal courts require statutory and constitutional jurisdiction to hear proceedings, a "bankruptcy court always has an obligation to examine its jurisdiction to hear post-confirmation adversary proceedings." *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 839 (4th Cir. 2007). This responsibility to review subject matter jurisdiction can "be raised at any time by the parties or by the court itself." *In re Medlin*, 269 B.R. 591, 592–93 (Bankr. E.D.N.C. 2001) (citations omitted); *In re Woods*, 130 B.R. 204, 206 (W.D. Va. 1990) ("It has been long

4

established that a federal court may, at any time during the pendency of a case, either on a motion of one of the parties or its own motion, consider whether it has subject matter jurisdiction of that case."). Moreover, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### 2. Burden of Proof

The party asserting jurisdiction has the burden of proving that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991); Grathwol *v. Coastal Carolina Developers, Inc.* (*In re Grathwol*), 505 B.R. 201, 203 (Bankr. E.D.N.C. 2014) (citations omitted) ("The burden of showing 'related to' jurisdiction is on the party asserting it."). A court may look beyond the pleadings to determine subject matter jurisdiction:

> When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

*Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

### 3. Is this a Core Matter?

A claim arises under the Bankruptcy Code when it is "based on any right expressly created by Title 11." V*alley Historic*, 486 F.3d at 835, quoting *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003). Claims "arise in" the bankruptcy, when the claims "would have no practical existence but for the bankruptcy." *In re Mitchell*, 11-08880-8-SWH, 2018 WL 1577710 at *6 (Bankr. E.D.N.C. 2018) (quoting *Bergstrom v. Dalkon Shield* (*In re A.H. Robins Co.*), 86 F.3d 364, 372 (4th Cir. 1996) (holding the bankruptcy court did not have subject matter jurisdiction over state law claims based on postpetition conduct that could be brought in state court and were not dependent on the bankruptcy case).

5

JSmith argues this is a core matter with jurisdiction from 28 U.S.C. § 157 for two reasons. First, while admittedly not directly affecting Barnhill's gross proof of claim amount, if successful, that claim would be subject to offset, resulting in a benefit to all other creditors by lowering Barnhill's share of the estate distribution to unsecured claims. Second, JSmith asserts its claims are related to but outside the State Court Action, which JSmith says is a core matter but for the contract arbitration requirement as to those claims. Because these related claims are outside of arbitration (at least according to JSmith), these maters should be considered core as well.[4]

Barnhill notes that the claims asserted here are founded in tort and were not included in Debtor's schedules or Disclosure Statement, and were not factored in the liquidation analysis presented at the confirmation hearing. It maintains the Plan contains no provision or authority for Debtor to pursue unlisted claims or utilize damages realized from this adversary proceeding to fund the Plan. Barnhill concludes by theorizing any recovery in this case would not benefit or materially affect the return to other unsecured creditors. Barnhill may or may not ultimately be proven correct, but because the distribution to class 18 general unsecured creditors is set at a specific amount in the confirmed Plan, a material reduction in the net amount owed to one creditor as a result of offset would increase the pro rata amount share of the distribution available to all other unsecured creditors. Whether or not such an outcome will result in a material difference would be a function of how much the damages prove to be in the event the action is successful.

Barnhill further argues that confirmation vests the property of the estate in the reorganized debtor pursuant to 11 U.S.C. § 1141(b) and therefore "it is impossible for the bankrupt debtor's

---

[4] On the other hand, JSmith acknowledges that a bankruptcy court would have constitutional authority only if the counterclaim "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *In re Murphy*, 569 B.R. 402, 411 (Bankr. E.D.N.C. 2017), *quoting Stern v Marshall*, 564 U.S. 462, 499 (2011). Since the claim is for a contract predating the chapter 11 case, JSmith must prove the latter.

6

estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred. *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 164 (3d Cir. 2004). JSmith argues this assertion is a red herring, as this is not truly a post-confirmation dispute. JSmith notes that in contrast to cases cited by Barnhill regarding post confirmation activities, here the dispute arose from pre-confirmation, in fact pre-petition, conduct. The court finds the vesting argument to be inapplicable here.

However, JSmith has not shown that resolution of this matter is necessary to the claims allowance process or that this is even a counterclaim to the proof of claim. Therefore, this adversary proceeding case is not a core matter, nor is it a case that otherwise arises under the Bankruptcy Code or one that directly arises within the chapter 11 bankruptcy case itself.

### 4. Non-Core Matters/ Related to Jurisdiction

Having found that these claims are not core in nature and do not "arise under" the Bankruptcy Code or otherwise "arise in" the bankruptcy, jurisdiction over Plaintiff's claims hang solely on the third peg of "related to" the bankruptcy case. 28 U.S.C. § 1334(b). In determining whether a non-core matter is "related to" the underlying bankruptcy case sufficiently to establish jurisdiction, in preconfirmation matters the bankruptcy court examines "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor,* 743 F.2d at 994. "Related to" jurisdiction is not limitless, *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 163-64 (3d Cir. 2004), but is very broadly interpreted in a preconfirmation context. *Canal Corp. v. Finnman,* 960 F.2d 396, 403 (4th Cir. 1992); *In re Titan Energy, Inc*. 837 F.2d 325, 330 (8th Cir. 1998) ("[E]ven a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test articulated in *Pacor*.") On the other hand, as is discussed below, the test for postconfirmation

7

related to jurisdiction is more stringent than it would be if the adversary proceeding were filed prior to plan confirmation.

### B. POSTCONFIRMATION JURISDICTION—CLOSE NEXUS TEST

Subject matter jurisdiction for bankruptcy courts narrows after plan confirmation. *Resorts Int'l,* 372 F.3d at 165-66 (holding that in a post confirmation context, the bankruptcy court did not have "related to" jurisdiction in adversary proceedings for non-core, purely state law claims between non-debtors where the claims had no "close nexus" with the administration of a confirmed chapter 11 bankruptcy plan).

> As stated, the jurisdiction of the non-Article III bankruptcy courts is limited after confirmation of a plan. But where there is a *close nexus* to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate.

*Id.* at 168-69 (emphasis added).

The "close nexus" test from the Third Circuit has been adopted by the Fourth Circuit as a "logical corollary of 'related to' jurisdiction" analysis in the postconfirmation stage. *Valley Historic,* 486 F.3d at 837. "Analytically, [the close nexus test] insures that the proceeding serves a bankruptcy administration purpose on the date the bankruptcy court exercises that jurisdiction." *Id*. As a consequence, in determining jurisdiction in a post confirmation setting:

> any civil proceeding must have a "close nexus" to the bankruptcy in order to be "related to" the bankruptcy proceedings. *Valley Historic*, 486 F.3d at 836–37; *see Resorts Int'l*, 372 F.3d at 167. A close nexus typically exists if the civil proceeding is one which "affect[s] the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Resorts Int'l*, 372 F.3d at 167.

*Keesee v. Mitchell*, 623 B.R. 402, 412 (E.D.N.C.), *aff'd,* 829 F. App'x 628 (4th Cir. 2020).

In *Valley Historic*, the Fourth Circuit found that no "close nexus" existed between the debtor's claims for relief and its plan, reasoning that "no conceivable bankruptcy administration

8

purpose [would be] served by the Debtor's adversary proceeding because the plan made no provision for the use of any recovery from the adversary proceeding but instead provided for the satisfaction of the Debtor's obligations 'entirely from post-petition rents and earnings....'" *Valley Historic,* 486 F.3d at 837. When that adversary proceeding was brought, the plan had been confirmed over thirty months prior and had already been substantially consummated. In fact, the creditors had already been paid all they were entitled to recover under the confirmed plan and therefore the outcome would have no effect on them. The fact that a cause of action arose while the chapter 11 proceeding was open did not automatically give the bankruptcy court subject matter jurisdiction, especially where creditors had already been paid under the applicable plan. *Id*. at 836.

### C. THE AVADO FACTORS

When jurisdiction is not obvious in postconfirmation, bankruptcy courts in this circuit have followed a six factor test from *Avado Brands, Inc. v. Dupree et al*, 358 B.R. 868(Bankr. N.D. Tex. 2006) (*citing In re Encompass Servs. Corp*., 337 B.R. 864, 873 (Bankr. S.D. Tex. 2006), to analyze whether a close nexus is presented. *See Dupree Farms, LLC v. Producers Agric. Ins. Co., (Dupree Farms, LLC),* Nos.18-00216-5-JNC, 19-00164-5-JNC, 2024 WL 2873190 at * 9-10 (Bankr. E.D.N.C. June 6, 2024). [5] The six factors ( the "*Avado* Factors") are:

> (1) When the claim at issue arose; (2) what provisions in the confirmed plan exist for resolving disputes and whether there are provisions in the plan retaining jurisdiction for trying these suits; (3) whether the plan has been substantially consummated; (4) the nature of the parties involved; (5) whether state law or bankruptcy law applies; and (6) indices of forum shopping.

*Id, at 878* .

---

[5] See also *In re Air Cargo, Inc.*, 401 B.R. 178 (Bankr. D. Md. 2008), and *Waldrep v Estate of Nusbaum et al*., AP 21-00078-JNC (Dkt. 54, Oct 13, 2022).

Barnhill argues the court need not analyze the *Avado* Factors asserting the proceedings here align so closely to the facts and circumstances in *Valley Historic,* no such review is warranted. Barnhill contends that, as in *Valley Historic,* no close nexus is present because the Plan contains no provision for the use of any recovery and there is no possible effect this proceeding might have on the interpretation, implementation, consummation, execution, or administration of the confirmed plan" required by *In re Resorts*. However, in the present case, the Plan contemplates the use of litigation funds as one method of funding the payments to creditors under the Plan. *See* Plan, Article IV.  Further, this matter is distinguishable from Valley Historic because creditors have not been fully paid yet, in fact, as noted below, the plan was not even substantially consummated at the time of the filing of the adversary proceeding.

Accordingly, the court finds the *Avado* Factors will be helpful in analyzing postconfirmation jurisdiction in the instant matter, and will discuss the effect of each of the six factors as discussed below.

**1. When the Claims Arose**

Turning to the *Avado* Factors, first, most tellingly, all of the claims asserted here rest on the pre-petition actions, and even pre-contract conduct (executed prepetition on September 27, 2021), of the Defendant. (Complaint ¶ 10.) JSmith argues that the gravamen of the litigation already existed at the time the petition was filed.

In response, Barnhill notes that creditors were not aware of these potential claims pre-confirmation as Plaintiff contends, and despite Plaintiff's assertions, the "ongoing litigation between Barnhill and Plaintiff" was not disclosed in Plaintiff's Schedules. However, there is no dispute that the claims at issue arose pre-petition, and the bankruptcy schedules filed in the case list a legal action for collection in the State Court Action.  While the tort-based claims alleged in the Complaint are not specified to the degree Barnhill would require, there is no evidence JSmith

10

sought to hide or cloak the claims. Barnhill was a participant in the prepetition activity, so it is not being blindsided here. And as JSmith points out, the recovery, even if treble damages, would not likely result in actual funds but in offset. While whether that is accurate remains to be seen, the origination of the claims prepetition weighs this factor in favor of jurisdiction.

### 2. The Plan Provisions

"Good plan language can preserve and clarify for notice purposes already existing jurisdiction post confirmation." *Dupree Farms* at *10. In this matter, Plaintiff contends it disclosed that it had claims against Barnhill and estimated the value of the claims in the Disclosure Statement. (Dkt. 297, the "Disclosure Statement").[6] Further, it points to the retention of jurisdiction language in the Plan, specifically pointing to retention of jurisdiction:

> 1) To determine any and all objections to the allowance of Claims and Interest.
>
> . . .

---

[6] The Disclosure Statement (Dkt. 297) set out the valuation of the state court litigation claims against Barnhill as follows:

> vii. The valuation of the Litigation Claim against Barnhill, set forth in Part 6(B)(i) is the amount that was deposited with the Wake County Clerk of Superior Court ($1,873,609.73), and does not account for, or provide any reduction in said amount, based upon the proof of claim, Claim No. 63, filed by Barnhill in the Bankruptcy Case, asserting a Claim against the Debtor, in offset and setoff, of $2,177,567.14.
>
> Barnhill Proof of Claim: 63-1
>
> Filed Jan 24 2024
>
> $2177,567.14
>
> Selma Burke Project--$820,132.13 damages
>
> NCCU School of Business Project--$1,022,670.09 plus stat damages under Ch 75—repair of parking lot $98,139.75—total of $1242709.16
>
> 400H Project--$75,000 in legal and expert fees for atty fees estimate for the pending litigation (No other claim)

(BK Dkt. 297 at 16.)

>3) To determine all controversies and disputes arising under or in connection with the Plan, and applications, adversary proceedings and litigated matters pending on the Confirmation Date.

(Dkt. 426 at 75.)

In this matter, the contract/collection litigation between Plaintiff and Barnhill was in existence at the time of the bankruptcy petition. JSmith contends Barnhill cannot feign surprise that additional claims might be brought against it, especially after discovery which it contends supports the extra-contractual and non-arbitrable claims. The State Court Action between Barnhill and Plaintiff was disclosed in Plaintiff's Schedules, and JSmith attempts to characterize this suit as an amendment to the previous claims filed by Plaintiff against Barnhill prior to the bankruptcy, with additional claims that must be heard in court since they are not arbitrable. Barnhill pushes back on this, noting that creditors were not aware of these tort claims prior to confirmation and that the Plan language is insufficient to reserve jurisdiction where this particular litigation was not pending on the Confirmation Date.

While the claims here were not specifically noticed in the Plan, contrary to Barnhill's analysis, the Plan does indeed provide for postconfirmation jurisdiction over litigation from facts occurring prepetition. It is not unusual for a complaint to be amended to add claims determined to exist during or following the discovery process. The fact that the State Court Action is in arbitration, but these claims are outside of its scope and cannot be directly added to that proceeding does not affect JSmith's ability to bring those claims in a court of proper jurisdiction. Barnhill sought to enforce the arbitration provision in the first place, and it cannot abandon the language on a pick and choose basis when the arbitration requirement cuts against it. Therefore, this factor also weighs in favor of jurisdiction.

### 3. Substantial Consummation

Next, the court must consider whether the Plan was already substantially consummated when the adversary proceeding was commenced. In analyzing this aspect for jurisdictional purposes, the controlling moment is when an adversary proceeding is filed, not some later arbitrary point. *Dupree Farms* at *11 (finding jurisdiction is not lost when a plan is substantially consummated after the filing of the adversary proceeding). *See Avado Brands, Inc.*, 358 B.R. at 878 (looking to whether the adversary proceeding was filed before or after substantial consummation); *Encompass Servs. Corp.,* 337 B.R. at 875 (examining a two-year period between plan effective date and adversary proceeding filing to determine whether substantial consummation occurred); *Valley Historic*, 486 F.3d at 839 (holding plan was substantially consummated prior to filing the adversary proceeding). "The [jurisdictional] inquiry must focus on whether the Court had jurisdiction over this adversary proceeding <u>at the time the Complaint was filed</u>." *In re Oxley Dev. Co., LLC*, 493 B.R. 275, 285 (Bankr. N.D. Ga. 2013) (emphasis added).

> According to the Bankruptcy Code,
>
> **(2)** "substantial consummation" means—
>
> > **(A)** transfer of all or substantially all of the property proposed by the plan to be transferred;
> > **(B)** assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> > **(C)** commencement of distribution under the plan.

11 U.S.C. § 1101.

The Plan defines it as follows:

> "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of the requisite payments called for under the Plan to all Classes.

13

(Dkt. 426 at 16, #56 Substantial Consummation.)

There is no genuine dispute that payments to unsecured creditors were scheduled to begin on June 30, 2025 (Plan at 64), subsequent to the filing of this adversary proceeding. Therefore, on the date the adversary proceeding was commenced, the Plan had not been substantially consummated. "Once validly filed, jurisdiction is not lost by subsequent substantial consummation." *Dupree Farms*, at *11; s*ee, e.g., Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, (1991) ("[I]f jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.") As with the first two factors, the lack of substantial consummation at case filing weighs in favor of jurisdiction.

   4.   **The Nature of the Parties Involved**

This factor weighs in favor of jurisdiction, as the parties are the Debtor and a known creditor/claimant with whom the Debtor was already engaged in litigation pre-petition. Barnhill is not surprised or unfairly ambushed in this proceeding. This factor weighs in favor of jurisdiction as well.

   5.   **Whether State or Bankruptcy Law Applies**

There is no dispute that Plaintiff's claims are state law claims, which weighs against jurisdiction but is not decisive.

   6.   **Indices of Forum Shopping**

JSmith argues there is no accusation of forum shopping, stating: "Plaintiff wants its claims heard and the Bankruptcy Court is the proper forum for this matter to be heard." (Response, Dkt. 11 at 11.) Barnhill posits that JSmith bringing the action smacks of forum shopping but offers no support for this contention. It simply makes a bald, unsubstantiated assertion.

Lacking any evidence or other basis to find otherwise, the court rules no indication of forum shopping is present. This factor has no bearing on this decision.

## CONCLUSION

In sum, these claims arose pre-petition and although not specifically reserved in the Plan, the Plan provides for continued jurisdiction over postconfirmation adversary proceedings related to the bankruptcy case and its outcome. The parties here are the Debtor and a known creditor who both (1) filed a large proof of claim and (2) is already engaged in ongoing arbitration (at its request) with the Debtor. The Plan was not substantially consummated at the time of the filing of the complaint, and while the claims are founded in state law claims, this court is no stranger to state law litigation as it daily considers North Carolina law in the matters presented to it. No support to indicate forum shopping was presented. Finally, while the distribution to general unsecured creditors in class 18 is set at a specific amount, the potential change of amount owed to one of the largest creditors in the case could result in a larger recovery for other unsecured creditors. Finding the balance of the *Avado* Factors weigh in favor of jurisdiction as well as the other facts and circumstances of this case, the court finds the claims in this adversary proceeding have a "close nexus" to the Plan, and post confirmation, related to jurisdiction exists in this matter.

For the foregoing reasons, the Motion is **DENIED**. Barnhill has **30 days** from the date of filing of this order to file an answer or other proper response to the Complaint.

## END OF DOCUMENT